[Civ. No. 36117. Second Dist., Div. One. Sept. 25, 1970.]

ALLEN BUD PEARSON, Plaintiff and Appellant, v.
CONTINENTAL AIRLINES, Defendant and Respondent.

614

**COUNSEL**

Douglas C. Phillips for Plaintiff and Appellant.

Chase, Rotchford, Drukker & Bogust and Lawrence O. de Coster for Defendant and Respondent.

**OPINION**

**LILLIE, J.**—Plaintiff appeals from an order granting defendant's motion to vacate a default and set aside a default judgment subsequently entered against it in the sum of $102,962 (damages for personal injuries), the grounds of which were inadvertence, mistake and excusable neglect (Code Civ. Proc., § 473). He claims the supporting declarations are devoid of any showing which warranted the relief sought, hence it was an abuse of discretion for the court to grant such relief.

From the complaint and the default hearing, it appears that plaintiff's injuries were sustained on October 18, 1968, when an automobile, in which he was a passenger, was overturned by a blast from the jet engine of an airplane owned by defendant; at that time plaintiff, an engineer employed by the Federal Aviation Administration, was lawfully on defendant's premises to make an inspection of the cabin interior installation of the aircraft involved. Service of summons and complaint was had on May 22, 1969; defendant's default was entered on June 18, 1969. At the default hearing, in answer to the court's inquiry with respect thereto, counsel for plaintiff stated: "They failed to answer the Complaint. It was validly served on them. I have had no contact by their office. Default has been entered. I'm sure in this case there may be a motion under 473 to set it aside, but under the circumstances, settlement discussion might be more realistically engaged in after the hearing this morning. And that probably is the practical effect of the proceeding here."

Defendant's motion to vacate having been filed on September 10, 1969, at the hearing of said motion the foregoing statement of plaintiff's counsel was recalled by the trial court (although in error as to the amount of the award): "There was an implied understanding between you and me that

you were going to merely use this judgment to force them to negotiate with you and get a good settlement . . . I wouldn't have given you $108,000 if I thought for one moment you would oppose a motion to set aside, because I brought the question up, they will be in here shortly to set it aside." Earlier the trial court made this further observation: "Well, we are not dealing with child's play here. We are dealing with $108,000. We have a situation where it's not an individual. If an individual is served with a Complaint and then he turns it over to his attorney and the attorney does nothing about it, leaves it on the top of his desk, and just neglects to take care of it, or is lackadaisical about it, that could be one thing. But here you have a big corporation. They have procedures. They have to turn it over to insurance carriers."

We make mention of the above colloquy between court and counsel for two reasons. ■ As to the first quoted excerpt, it has been several times declared that the law "looks with disfavor upon a party, who, regardless of the merits of the case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. [Citations.]" (*Weitz* v. *Yankosky,* 63 Cal.2d 849, 855 [48 Cal.Rptr. 620, 409 P.2d 700].) ■ As to the excerpt immediately following, it has been held that whether an erroneous filing of process papers in the office of the defendant corporation constituted excusable neglect was primarly for the trial court's discretion. (*Gorman* v. *California Transit Co.,* 199 Cal. 246, 248-249 [248 P. 923]; see also *Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523, 527 [190 P.2d 593].) ■ In light of the above guidelines, both governing the circumstances at bar, as well as other principles here controlling, we conclude that the order appealed from must be affirmed.

Three declarations were filed in support of defendant's motion, to none of which were any counterdeclarations presented. One Gierok, a claim representative for Aetna Casualty Company, stated that his company received notice of the accident from its insured, defendant corporation; that as of February 24, 1969, no claim having been presented by plaintiff, he put his file relating to the accident in a "six month diary" to be closed at the expiration of that period if no action had been taken. On August 20, 1969, upon checking superior court records, he first learned that an action had been filed; he then contacted plaintiff's counsel who told him that the matter was in default as of July 7, 1969, and that the declarant could obtain further particulars from the court records; according to the declarant, plaintiff's counsel requested that the insurance company make a settlement offer, but declarant replied that his investigation indicated that "it was a no liability case and we would pursue any procedures to set aside default." According to Gierok, two conversations were had that same day with plaintiff's counsel, in one of which plaintiff's counsel stated that "he

had been hoping that no one would discover the default until six months were up." Mark Moore, an assistant secretary of defendant corporation, stated that he oversees and supervises the department which initially handles any summons and complaints served on his employer; when he received the summons and complaint in the instant matter, he gave the documents to one of the girls on his clerical staff—he could not recall her identity. His declaration then outlined the procedures followed in such cases: Before transmittal thereof to the company's insurance department, a Xerox copy of the papers is prepared; this, together with a transmittal slip, is then forwarded to the insurance department. (Copies of both the summons and complaint as well as the transmittal slip customarily remained in declarant's department.) Upon discovery that a default had been taken in the instant matter, he checked his files and found that while the summons and complaint had been filed, there was no evidence that a transmittal slip had been prepared—the insurance department had no indication that the pertinent papers had ever been forwarded to them. Finally, a declaration by one of defendant's present counsel (Mr. de Coster) stated that he talked by telephone with plaintiff's attorney on or about August 21, 1969; that he requested a stipulation to set aside the default for the reason that the matter had just gotten into the hands of an attorney; that plaintiff's counsel refused to enter into the stipulation requested but did say that he would discuss a settlement of the case.

Citing such cases as *Ray Kizer Constr. Co.* v. *Young,* 257 Cal.App.2d 766 [65 Cal.Rptr. 267], *Price* v. *Hibbs,* 225 Cal.App.2d 209 [37 Cal.Rptr. 270], *Yarbrough* v. *Yarbrough,* 144 Cal.App.2d 610 [301 P.2d 426], and *Elms* v. *Elms,* 72 Cal.App.2d 508 [164 P.2d 936], appellant contends that the trial court's discretion in these matters is controlled by fixed legal principles, one of which is that the default may not be set aside unless the moving party fulfills the burden of showing its entry through mistake, inadvertence or excusable neglect; this burden, he continues, was not met by defendant since the "mislaying of process" (as held in certain of the above cases) does not constitute inadvertence or excusable neglect as those terms are used in section 473. ■ However, what constitutes excusable neglect depends upon the facts of each case (*Bernards* v. *Grey,* 97 Cal.App.2d 679, 686 [218 P.2d 597]); in reaching the conclusion that the trial court did not abuse its discretion in determining that there was excusable neglect, the court in *Bernards* had occasion to discuss the holdings in *Gorman* v. *California Transit Co.,* 199 Cal. 246 [248 P. 923], and *Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523 [190 P.2d 593], referred to in an earlier portion of this opinion, and relied on here by respondent for an affirmance.

The facts in these last two cases are not wholly dissimilar to the situation

at bar, although plaintiff asserts that they are distinguishable. It will suffice to summarize the circumstances in *Benjamin*. Therein the president of defendant company, upon receipt of the copies of summons and complaint, directed his private secretary to forward the papers to the company's attorney; according to the secretary, she "misunderstood" the directions thus given to her, laboring under the impression that she was to file the papers in the office files; "as a result of such misunderstanding" she "failed to forward" the papers to defendant's attorney until advised by the latter that a judgment had been taken against the company. It was held that "the president's delinquency stemmed from his reliance upon his secretary to follow his forwarding instructions and his failure to anticipate her misunderstanding them, with the result that the process papers were placed in the office files . . . whether or not [the secretary's delinquency] was 'excusable' was primarily a question for the trial court's discretion [citation], particuarly as related to her employee status. Factual situations generally similar to the present case in that they involved an erroneous filing in the office . . . of the defendant corporation [citing the *Gorman* case, *supra*] have been deemed sufficient explanation for failure to make a seasonable appearance in defense of an action. The inadvertence of defendant's officers rested not on mere forgetfulness [citation] but on a misunderstanding in the execution of properly given instructions, a mistake 'which might be easily made . . . without any culpable carelessness' on the part of the parties concerned. [Citation.]" (P. 527.)

▉ In the case at bar the company's officer (Moore) turned the pertinent papers over to a member of his clerical staff for processing and transmittal to the insurance department. Thus, there was not a "mislaying of process" due to "mere forgetfulness" within the meaning of the decisions relied on by plaintiff; indeed, one such decision (*Yarbrough* v. *Yarbrough, supra*) points out that "the trial court may find 'excusable neglect' where an employee or associate . . . of the defendant erroneously files the papers so that defendant's attention is not called to them [citations]." (144 Cal.App. 2d 610, 615.) True, there is no declaration by the erring member of Moore's staff that she "misunderstood" his orders or specifically failed to follow customary procedures, this omission being due to Moore's inability to recall her identity; however, either or both of the circumstances seem fairly inferable from his declaration. ▉ " 'In a matter in which an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contentions of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom.' [Citation.]" (*Kooper* v. *King,* 195 Cal.App.2d 621, 626 [15 Cal.Rptr. 848].) To the same effect is *Lynch* v. *Spilman,* 67 Cal.2d 251, 259 [62 Cal.Rptr. 12, 431 P.2d 636]. ▉ Too, we cannot say that it was unreasonable for the trial

court to draw the above inference, particularly when viewed in the light of the following pronouncements which have found their way into other decisions whose number is legion: ". . . [O]ur courts have repeatedly stated that it is the policy of our law to allow each contested cause to be tried on its merits. Code of Civil Procedure, section 473, is a legislative expression of this policy. Our courts will indulge all presumptions and resolve all doubts in favor of orders setting aside defaults. An order setting aside a default under the provisions of Code of Civil Procedure, section 473, will not be reversed unless the record clearly shows an abuse of discretion. [Citations.]" (*Hodge Sheet Metal Products* v. *Palm Springs Riviera Hotel,* 189 Cal.App.2d 653, 657 [11 Cal.Rptr. 435].)

 Another factor favoring the relief sought below, which presumably the trial court properly considered, was the absence of any prejudice to plaintiff as the result of its order. (*Nilsson* v. *City of Los Angeles,* 249 Cal.App.2d 976, 980 [58 Cal.Rptr. 20].) No claim is made by plaintiff of dead or unavailable witnesses, the sole detriment to his cause apparently being the delay resulting from the order here challenged; but mere delay in securing satisfaction of his monetary demand is not sufficient ground for a reversal of the order leading to such delay. (*Brill* v. *Fox,* 211 Cal. 739, 744 [297 P. 25].) Too, with respect to the matter of a belated termination of the current litigation, it is appropriate to point out that plaintiff is not wholly blameless in the premises; thus, although the accident occurred on October 10, 1968, his action was not commenced until more than seven months later (May 16, 1969). Defendant, on the other hand, acted promptly upon learning of the erroneous filing; its motion to vacate was filed within 20 days thereafter, being accompanied by its answer to the complaint which, pursuant to minute order, was duly filed.

This brings us to the final circumstance bearing upon the exercise of judicial discretion by the court below. While there is no requirement that advance notice be given of an application for the entry of an adversary's default (*Turner* v. *Allen,* 189 Cal.App.2d 753, 758 [11 Cal.Rptr. 630]), under the decisional law earlier noted the applicant acts at his own risk. The law looks with disfavor upon the advantage taken by one party when the other party is guilty of excusable neglect. Without suggesting that plaintiff's counsel was guilty of overreaching, the fact remains (as borne out by his own statements) that a "settlement discussion might be more realistically engaged in after the hearing this morning. And that probably is the practical effect of the proceeding here." It was for the trial court, not this court, to determine whether his subsequent conduct was "advantage taking" meriting the law's disfavor, just as it was primarily

the trial court's function to conclude whether a sufficient showing of excusable neglect had been made out by defendant's moving papers.

Under all the circumstances, and for the reasons above discussed, we find no clear abuse of discretion warranting appellate intervention.

The order is affirmed.

Wood, P. J., and Gustafson, J., concurred.